IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAYNA SEPULVEDA, individually and as guardian/custodian of NM and HM; <br><br> Plaintiff, <br><br> vs. <br><br> KATERI PAYER, individually and as a person acting in concert with others to enforce the April 6, 2026 pickup order; and DOES 1-5, <br><br> Defendants. | **8:26CV128** <br><br><br> **MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff Rayna Sepulveda's ("Sepulveda") Complaint, Filing No. 1. Sepulveda, a non-prisoner proceeding pro se, filed a Motion for Leave to Proceed in Forma Pauperis ("IFP"). Filing No. 2. Upon review of Plaintiff's Motion, the Court finds that Plaintiff is financially eligible to proceed in forma pauperis. The Court also conducts an initial review of Sepulveda's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). Also before the Court is Sepulveda's Motion for Temporary Restraining Order ("TRO"), Filing No. 3. Sepulveda's Motion for TRO and Complaint are addressed below.

## I. SUMMARY OF COMPLAINT

Sepulveda filed this action under 42 U.S.C. § 1983, individually and as guardian/custodian of minor children NM and HM, seeking emergency declaratory and injunctive relief. Filing No. 1 at 1. Sepulveda does not seek a final custody determination, but seeks "narrow, temporary, status-quo-preserving relief" restraining enforcement of the Omaha Tribal Court's "April 6, 2026 pickup order." Filing No. 1 at 1. Sepulveda seeks

an order restraining enforcement pending this Court's assessment of whether meaningful tribal review exists. Filing No. 1 at 1.

Sepulveda is a California resident who has had continuous care of NM and HM since 2018. Filing No. 1 at 2. During that time, NM and HM have maintained residence, schooling, and therapeutic support. Filing No. 1 at 2. On February 10, 2026, the Omaha Tribal Court entered an order terminating Sepulveda's guardianship and directing return of the children after a transition period (the "Guardianship Order"). Filing No. 1 at 2. Sepulveda timely filed a notice of appeal and a motion for stay pending appeal on February 20, 2026. Filing No. 1 at 2. She also sought written clarification of the appellate process, including the identity of the appellate court, filing procedures, deadlines, fees, and appellate clerk information. See Filing No. 1 at 2-3. Sepulveda alleges "the clerk" acknowledged Sepulveda's requests and the clerk said she would try to get the appellate information for Sepulveda.

As of March 19, 2026, no functioning appellate forum had been identified and no workable record-transmission process had been provided. Filing No. 1 at 3. On March 24, 2026, the Omaha Tribal Court denied Sepulveda's motion to correct or amend and motion to stay pending appeal. Filing No. 1 at 3. At the same hearing, the Tribal Court asserted exclusive jurisdiction over the children's care and custody, and authorized Defendant Kateri Payer, identified as NM's and HM's mother, to retrieve NM and HM from Sepulveda's Temecula, California, residence on April 6, 2026, at 12:00 p.m. Pacific Time. Filing No. 1 at 3. The Tribal Court expressly authorized Payer to utilize local law enforcement to facilitate the removal (the Tribal Court's March 24, 2026, orders collectively referred to as the "March 24 Orders"). Filing No. 1 at 3. Payer subsequently

2

submitted written notice confirming she would travel to Sepulveda's residence on that date and time to retrieve the children. Filing No. 1 at 3. NM's and HM's therapist advised Sepulveda that continued treatment would not be possible after relocation due to licensure and insurance restrictions. Filing No. 1 at 4.

Sepulveda invokes federal question jurisdiction under 28 U.S.C. § 1331, relying on *National Farmers Union Insurance Cos. v. Crow Tribe*, 471 U.S. 845 (1985). Filing No. 1 at 4. She argues that exhaustion of tribal remedies is unavailable or futile given the absence of a functioning appellate forum, the denial of the stay, and the imminent return of the children to their mother. Filing No. 1 at 4. In the alternative, Sepulveda petitions for habeas corpus relief under 25 U.S.C. § 1303 to the extent enforcement of the March 24 Orders constitute a restraint or detention cognizable under the Indian Civil Rights Act. Filing No. 1 at 5.

Sepulveda contends that the threatened harm is immediate and irreparable because no subsequent order can fully restore the status quo if the children are removed before any meaningful review occurs. Filing No. 1 at 5. Sepulveda requests a temporary restraining order barring Payer "and all persons acting in concert with her" from enforcing the March 24 Orders. Filing No. 1 at 5; *see also* Filing No. 3 at 3. Sepulveda also seeks a specific injunction, restraining Defendants from using or working with local law enforcement to facilitate removal of the children. Filing No. 1 at 5; *see also* Filing No. 3 at 3. She seeks an expedited preliminary injunction hearing, preservation of all relevant records, identification of the tribal-court record custodian, and nominal or waived security under Fed. R. Civ. P. 65(c). Filing No. 1 at 5-6.

3

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). However,

4

even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION OF COMPLAINT

"Federal courts are courts of limited jurisdiction," and a federal court must therefore determine its jurisdiction as a threshold matter.  *Kessler v. Nat'l Enter., Inc.*, 347 F.3d 1076, 1081 (8th Cir. 2003) (quoting *Godfrey v. Pulitzer Publ'g Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998).  The burden of establishing jurisdiction rests with the party asserting it. *Hilger v. United States*, 87 F.4th 897, 899 (8th Cir. 2023). Sepulveda invokes two potential bases for federal jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331 and, in the alternative, habeas corpus under 25 U.S.C. § 1303.  For the reasons stated, neither basis supports jurisdiction over Sepulveda's Complaint.

### A.  Federal Question Jurisdiction Under 28 U.S.C. § 1331

#### 1.  Federal Question Jurisdiction Under National Farmers

In general, federal courts do not have jurisdiction over a range of cases implicating domestic relations issues, such as divorce, allowance of alimony, child custody, and child support.  *See Wallace v. Wallace*, 736 F.3d 764, 766 (8th Cir. 2013).  However, the United States Supreme Court has determined that a challenge regarding the jurisdiction of an Indian[1] tribe does present a federal question that may be adjudicated in federal courts. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 852-53 (1985). The Supreme Court explained:

> The question whether an Indian tribe retains the power to compel a non-
> Indian property owner to submit to the civil jurisdiction of a tribal court is one

---

[1] "Indian" is a term used in 25 U.S.C. § 1914 itself.  The Court uses these terms in this Memorandum and Order because federal law commonly and pervasively refers to those descended from or affiliated with recognized American Indian tribes as "Indians."  *See Bear v. Wickre*, No. 5:24-CV-05065-RAL, 2025 WL 868955, at *5 (D.S.D. Mar. 20, 2025).

> that must be answered by reference to federal law and is a federal question under § 1331.  Because petitioners divested the Tribe of this aspect of sovereignty, it is federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference.  They have, therefore, filed an action "arising under" federal law within the meaning of § 1331. The District Court correctly concluded that a federal court may determine under § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction.

*Id*.

In other words, federal courts have jurisdiction under 28 U.S.C. § 1331 to determine whether a tribal court has exceeded the lawful limits of its jurisdiction, because the scope of a tribal court's jurisdiction is a question of federal law.  *Id*. at 852; *see also Miodowski v. Miodowski*, No. 8:06CV443, 2006 WL 3454797, at *2 (D. Neb. Nov. 29, 2006).  Federal jurisdiction extends to matters where a plaintiff mounts a genuine challenge to tribal court jurisdiction over child custody matters.  *See DeMent v. Oglala Sioux Tribal Court*, 874 F.2d 510, 513 (8th Cir. 1989); *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 892 n. 20 (2d Cir. 1996) ("Child custody cases of this sort," i.e. those involving jurisdictional challenges, "are perhaps better characterized as falling under 28 U.S.C. § 1331: whether a tribal court has properly exercised jurisdiction presents a federal question."); *United Keetoowah Band of Cherokee Indians in Okla. v. Barteaux*, 527 F. Supp. 3d 1309, 1321 (N.D. Okla. 2020) ("[F]ederal question jurisdiction exists to determine whether a tribal court has exceeded its jurisdiction, even in child custody cases.").

In sum, the federal question jurisdiction recognized in *National Farmers* and its progeny is specifically tied to challenges to tribal court jurisdiction.  However, Sepulveda's Complaint contains no jurisdictional challenge.  She does not allege that the Omaha Tribal Court lacked jurisdiction over the children, over the guardianship proceedings, or over the

termination of her guardianship.  To the contrary, her Complaint demonstrates consistent engagement with the tribal court as a legitimate forum.  She alleges that she filed a notice of appeal, a motion for stay pending appeal, a motion to correct or amend the order, and multiple requests for record preservation, all within the tribal court system.  Filing No. 1 at 2-3.  Sepulveda specifically alleges that the Omaha Tribal Court asserted that it was "the only court with jurisdiction to hear any claims concerning the care and custody of the minor children."  Filing No. 1 at 3.  This assertion is unchallenged in the Complaint.  Even construed liberally, Sepulveda does not challenge the tribal court's authority to act; rather, she challenges the adequacy of its appellate process and the irreversibility of enforcement before that process is exhausted.  These are procedural or equitable challenges, not jurisdictional ones.  Accordingly, her allegations as pled do not support federal question jurisdiction under § 1331.

### 2. Exhaustion of Tribal Remedies and the Futility Exception

Even if the Complaint could be construed to raise a jurisdictional challenge, the tribal exhaustion doctrine would bar federal intervention at this stage.  Federal courts ordinarily must abstain from cases that challenge tribal court jurisdiction until tribal court remedies, including tribal appellate review, are exhausted.  *See* National Farmers, 471 U.S. at 856-57.  Sepulveda acknowledges this requirement but argues that exhaustion is unavailable or futile given the absence of a functioning appellate forum.  *See* Filing No. 1 at 4.  The Supreme Court has recognized three narrow circumstances where exhaustion is excused:  (1) where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, (2) where the action is patently violative of express jurisdictional prohibitions, or (3) where exhaustion would be futile because of the lack of

an adequate opportunity to challenge the court's jurisdiction. *Nevada v. Hicks*, 533 U.S. 353, 369 (2001) (citing *National Farmers*, 471 U.S. at 856 n. 21). Construed liberally, Sepulveda invokes the last exception, arguing that exhaustion would be futile because there is no functioning appellate forum that has been identified. *See* Filing No. 1 at 4; *see also Krempel v. Prairie Island Indian Cmty.*, 125 F.3d 621, 622 (8th Cir. 1997) ("Case law supports the notion that if there is no functioning tribal court, exhaustion would be futile and therefore would not be required.").

The Eighth Circuit has taken a strict approach to the tribal exhaustion rule, requiring a substantial showing of eligibility for any exception. *Reservation Tel. Co-op. v. Three Affiliated Tribes of Fort Berthold Reservation*, 76 F.3d 181, 185-86 (8th Cir.1996). The Eighth Circuit has reserved the exception only for circumstances where "the very tribal *remedies* which the plaintiffs would have had to exhaust before challenging tribal authority in federal court were preempted by express statutory provisions." *Id*. (emphasis in original). "'A substantial showing must be made by the party seeking to invoke [the express jurisdictional prohibition] exception to the tribal exhaustion rule.'" *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 910 F.Supp.2d 1188, 1197 (D.S.D. 2012) (quoting *Kerr–McGee Corp. v. Farley*, 115 F.3d 1498, 1502 (10th Cir.1997)).

For example, in *Barteaux*, the court found a substantial allegation of futility where plaintiffs alleged the tribal court itself did not properly exist under federal law. 527 F. Supp. 3d at 1323-24. If correct, the court reasoned, there was no tribal forum at all, "so exhaustion would be futile and serve no purpose other than delay." *Id*. at 1323. Sepulveda's allegations are far more vague. She contends that the tribal appellate process has not been clearly identified or made accessible, not that the Omaha Tribal

Court lacks legal authority to exist or to act. *See* Filing No. 1 at 3-4. She does not allege that the Omaha Tribal Court lacks an appellate forum. Instead, even construed liberally, Sepulveda alleges that, at the time of the Complaint, a clerk had not yet provided information about the appellate forum to Sepulveda. The Court cannot conclude that Sepulveda sufficiently alleges futility.

### 3. Structural Deficiencies of the Complaint

Regardless of the sufficiency of the allegations, the Complaint is structurally deficient. Federal question jurisdiction and the futility exception articulated in *National Farmers* are premised on overreach or inadequacy, respectively, of the tribal forum itself. *See National Farmers*, 471 U.S. at 853, 856 n. 21. Any claim invoking jurisdiction or the futility exception would thus require that the tribal court or the tribe be named as a defendant. This is so because the relief that would flow from a successful argument would be directed at the tribal forum. *See DeMent*, 874 F.2d at 513; *Barteaux*, 527 F. Supp. 3d at 1323-24. Under either theory, federal court intervention would be appropriate because the *tribal court* exceeded its jurisdiction or because the *tribal forum* cannot provide adequate review.

Here, Sepulveda named Kateri Payer, a private individual, as the defendant, along with Doe defendants who "may act in concert with Payer" to facilitate the March 24 Orders. Sepulveda has not named the Omaha Tribal Court, any tribal officer, or the Omaha Tribe. A TRO against Payer would not bind the tribal court, would not suspend any of the tribal court's orders, and would not require the tribe to establish or provide appellate procedures. This remedial gap is not a curable technical defect; it reflects a fundamental mismatch between the relief Sepulveda seeks and the party she has named to provide it.

9

Accordingly, the Court cannot grant the relief Sepulveda seeks against the party she has named as a defendant.

**B. Habeas Corpus Jurisdiction Under 25 U.S.C. § 1303**

As an alternative ground for relief, Sepulveda petitions the court for habeas relief under 25 U.S.C. § 1303. The Indian Civil Rights Act authorizes federal habeas corpus relief to "any person, in a court of the United States, to test the legality of [their] detention by order of an Indian tribe." 25 U.S.C. § 1303. Sepulveda invokes this provision in the alternative, acknowledging that relief under the Indian Civil Rights Act is limited. Filing No. 1 at 5. Habeas relief under § 1303 is unavailable here for several reasons.

First, federal courts have consistently held that tribal court child custody orders do not "detain" children within the meaning of § 1303. *See, e.g., Barteaux*, 527 F. Supp. 3d 1309, 1317–18 (N.D. Okla. 2020) (collecting cases). This conclusion flows from the Supreme Court's holding in *Lehman v. Lycoming County Children's Services Agency*, 458 U.S. 502, 511 (1982), that the custody of foster or adoptive parents over a child is not the type of custody traditionally challenged through federal habeas, including habeas actions brought under § 1303. *See Richman v. Native Village of Selawik*, No. 3:22-cv-00280-JMK, 2023 WL 3764599, at *3–4 (D. Alaska June 1, 2023). The Tenth Circuit has likewise recognized that the detention language in § 1303 is analogous to the "in custody" requirement of other federal habeas statutes and must be construed narrowly in favor of tribal sovereignty. *Valenzuela v. Silversmith*, 699 F.3d 1199, 1203 (10th Cir. 2012).

The March 24 Orders, which direct that NM and HM be transferred from Sepulveda's custody to their mother, Payer, is precisely the kind of child custody determination that does not constitute "detention" for purposes of § 1303. *See* Filing No.

1 at 3. Sepulveda does not allege that the children are being held against their will or subjected to any restraint on their liberty independent of the custody determination itself. Her sole detention theory is that the tribal court's custody order amounts to a detention of the children. This is the same argument that has been consistently rejected as insufficient to trigger § 1303 habeas jurisdiction. *See Richman*, 2023 WL 3764599, at *4; *Barteaux*, 527 F. Supp. 3d at 1318.

Second, although some courts have recognized a narrow exception to the general rule against § 1303 habeas relief in child custody cases, the exception would not apply here. Some courts have held that § 1303 habeas relief is available where a tribal court has refused to honor a conflicting state custody decree. *See United States ex rel. Cobell v. Cobell*, 503 F.2d 790, 795 (9th Cir. 1974); *DeMent v. Oglala Sioux Tribal Court*, 874 F.2d 510, 513-15 (8th Cir. 1989). The defining characteristic of the exception articulated in *Cobell* and *DeMent* is competing custody orders issued by different sovereigns. *See id.* This feature is wholly absent here. Sepulveda does not allege, for example, the existence of any California state court custody order governing the children. Her authority over the children, according to the Complaint, derives entirely from the Omaha Tribal Court proceedings, specifically the guardianship that the same tribal court has now terminated. Filing No. 1 at 2. Because Sepulveda does not allege the existence of a conflicting decree from a court of a separate sovereign, the exception in *Cobell* and *DeMent* provides no basis for § 1303 jurisdiction.

Finally, as with her claim for federal question jurisdiction, Sepulveda has named the wrong respondent. Habeas corpus, by its nature, runs against the custodian or the person or entity with legal authority over the detained individual. *See Rumsfeld v. Padilla*,

11

542 U.S. 426, 435 (2004). In the tribal court context, the proper respondent in a habeas action under § 1303 would be the tribal officer or tribal court exercising legal authority over the subject of the petition, not a private individual who is merely the beneficiary of a tribal court order. As stated above, Sepulveda named Payer as the sole respondent. Filing No. 1 at 1. She has not named the Omaha Tribal Court, any officer of the Omaha Tribe, or the Omaha Tribe itself. The Doe defendants are described only as persons acting in concert with Payer to enforce the pickup order, not as tribal officials or officers of the tribal court. Filing No. 1 at 1. Because the respondent is not the custodian exercising legal authority over the children under the tribal court's order, the § 1303 claim fails.

### IV.  MOTION FOR TEMPORARY RESTRAINING ORDER

Because this Court lacks jurisdiction over Sepulveda's claims, her Motion for TRO is moot and must be denied. *See Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 523 (10th Cir. 2023) (*citing D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004));

### VI.  CONCLUSION

For the reasons stated, this Court lacks subject matter jurisdiction over Sepulveda's claims under either 25 U.S.C. § 1303 or 28 U.S.C. § 1331. Her Motion for TRO must consequently be denied as moot. Nevertheless, if Sepulveda wishes to proceed on valid claims under § 1983 or any other federal law, she shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently states her federal claims against the appropriate defendants. The amended complaint must specify the capacity in which the defendants are sued and must set forth

all of Sepulveda's claims and any supporting factual allegations.  To be clear, if Sepulveda chooses to file an amended complaint, she must restate the relevant allegations she wishes to pursue, and any new allegations.  Sepulveda should be mindful to explain the relief she is seeking and to state the constitutional and jurisdictional basis for her claim. Sepulveda is warned that any amended complaint she files will supersede, not supplement, her prior pleadings and supplements.

If Sepulveda fails to file an amended complaint in accordance with this Memorandum and Order, this action will be dismissed without prejudice and without further notice.  The Court reserves the right to conduct further review of Sepulveda's claims pursuant to 28 U.S.C. § 1915(e) after she addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED:

1.      Sepulveda's request for leave to proceed in forma pauperis, Filing No. 2, is granted, and the Complaint shall be filed without payment of fees.

2.      Sepulveda shall have 30 days to file an amended complaint in accordance with this Memorandum and Order.  Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Sepulveda.  In her amended complaint, Sepulveda must state the capacity (official, individual, or both) in which each Defendant is sued and set forth all of Sepulveda's claims (and any supporting factual allegations) against each Defendant.  Sepulveda should be mindful to explain in her amended complaint what each Defendant did to her, when each Defendant did it, and how each Defendant's actions harmed her.  Sepulveda should also

13

be mindful to explain the relief she is seeking and to state the constitutional and jurisdictional basis for her claims.

3.      In the event Sepulveda files an amended complaint, she shall restate the allegations of the Complaint, Filing No. 1, she wishes to pursue, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims.  Sepulveda is warned that an amended complaint will supersede, not supplement, her prior pleadings.

4.      The Court reserves the right to conduct further review of Sepulveda's claims pursuant to 28 U.S.C. §§ 1915(e) in the event she files an amended complaint.

5.      The Clerk of the Court is directed to set a pro se case management deadline using the following text: **May 4, 2026** —amended complaint due.

6.      The Clerk of Court is direct to send to Plaintiff the Form Pro Se 15, Complaint for Violation of Civil Rights (Non-Prisoner).

7.      Sepulveda's Motion for Temporary Restraining Order, Filing No. 3, is denied as moot.


Dated this 3rd day of April, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge

14